UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

Plaintiff,

v.

Gabriel Adam Alexander Luthor, *also
known as Gabriel Adam Alexander
Langford*, and Elizabeth Christine Brown,

Defendants.

File No. 25-cr-88 (ECT/LIB)

**OPINION AND ORDER**

---

Matthew D. Forbes, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Thomas C. Plunkett, Thomas C. Plunkett, Attorney at Law, St. Paul, MN, for Defendant Gabriel Adam Alexander Luthor.

Andrew S. Garvis, Koch & Garvis, Minneapolis, MN, and Erica E. Davis, Davis and Egberg, PLLC, Minneapolis, MN, for Defendant Elizabeth Christine Brown.

---

The United States has charged Defendants Gabriel Adam Alexander Luthor and Elizabeth Christine Brown with wire fraud and money laundering. ECF No. 1 ¶¶ 7–74. Defendants filed numerous pretrial motions, including two motions to suppress evidence obtained from search warrants. *See* ECF Nos. 56, 63 (motions to suppress); ECF Nos. 52–55, 58–62 (motions for disclosure and to preserve and produce material). Magistrate Judge Leo I. Brisbois addressed these motions in a Report and Recommendation. ECF No. 79 (order); ECF No. 80 (Report and Recommendation). Defendants Luthor and Brown object to Judge Brisbois's recommendation to deny the suppression motions, ECF Nos. 56, 63.

*See* ECF No. 83 (Brown objection); ECF No. 84 (Luthor objection).  Because Defendants objected, I am required to review the Report and Recommendation de novo pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 72.2(a)(3) and 72.2(b)(3).  To the extent no party objected, the Report and Recommendation will be reviewed for clear error.  *See* Fed. R. Civ. P. 72(b); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).  This order presumes familiarity with the Report and Recommendation.

I

Defendants object to Judge Brisbois's recommendation to deny suppression motions as to evidence obtained pursuant to six warrants:

1. *Instagram Search Warrant.*  In case number 21-mj-96 (D. Minn.), Magistrate Judge Tony N. Leung issued a warrant authorizing the search of four Instagram accounts— one belonging to Mr. Luthor, one belonging to Ms. Brown, and two belonging to unindicted subjects.  ECF No. 56-1 at 4 ¶ 1; ECF No. 63-1 at 2 ¶ 1.  The warrant was signed January 29, 2021.  ECF No. 56-1 at 1.

2. *Email Search Warrant.*  In case number 21-mj-97 (D. Minn.), Magistrate Judge Leung issued a warrant authorizing the search of two Google email accounts, one of which was controlled by Ms. Brown.  ECF No. 56-2 at 4 ¶ 1; ECF No. 74 at 2 n.2 (stating that Ms. Brown controlled one of the accounts).  The warrant was signed January 29, 2021.  ECF No. 56-2 at 1.  Only Ms. Brown moved to suppress evidence from the Email Search Warrant.  *See* ECF No. 56 at 1; ECF No. 63 at 1–2.

3. *Facebook Search Warrant.*  In case number 21-mj-102 (D. Minn.), then-Magistrate Judge Katherine M. Menendez issued a warrant authorizing the search of

three Facebook accounts—one belonging to Mr. Luthor, one belonging to Ms. Brown, and one belonging to a non-party.  ECF No. 56-3 at 4 ¶ 1; ECF No. 63-2 at 2 ¶ 1.  The warrant was signed February 1, 2021.  ECF No. 56-3 at 1.

4. *Welters Way Search Warrant.*  In case number 23-mj-12 (D. Minn.), Magistrate Judge Dulce J. Foster issued a warrant authorizing the search of premises located at XXXXX Welters Way, Eden Prairie, Minnesota.[1]  ECF No. 56-4 at 6 ¶ 4(a); ECF No. 63-3 at 6 ¶ 4(a).  The warrant was signed January 9, 2023.  ECF No. 56-4 at 1.

5. *GVM Search Warrant.*  In case number 23-mj-25 (D. Nev.), Magistrate Judge Nancy J. Koppe issued a warrant authorizing the search of particular suites located on XXXXX S Maryland Pkwy, Las Vegas, Nevada, where Defendants' business Golden Victory Medical ("GVM") operated.  ECF No. 56-5 at 24 ¶ 80; *id.* at 33; ECF No. 63-6 at 24 ¶ 80; *id.* at 33.  The warrant was signed January 11, 2023.  ECF No. 56-5 at 32.

6. *Twenty-Three Device Search Warrant.*  In case number 23-mj-567 (D. Minn.), Magistrate Judge Foster issued a warrant authorizing the search of twenty-three devices found at the Welters Way property and seized pursuant to the Welters Way Search Warrant.  ECF No. 56-7 at 19; ECF No. 63-5 at 19.  The devices included cell phones, tablets, and laptops, and the warrant does not specify each device's owner.  ECF No. 56-7 at 19; ECF No. 63-5 at 19.  The warrant was signed July 19, 2023.  ECF No. 56-7 at 1.

Judge Brisbois concluded that all six warrants were justified by probable cause and recommended that the motions to suppress be denied.  ECF No. 80 at 38, 43, 48, 50.  He

---

[1]    Following the Report and Recommendation, addresses will be partially redacted in this Opinion and Order.  *See* ECF No. 80 at 10.

also determined that even if any warrant failed to establish probable cause, the officers relied on the magistrate judges' probable-cause determinations in good faith, and the evidence obtained from the searches was therefore admissible. *Id.* at 48–49; *see United States v. Leon*, 468 U.S. 897, 922 (1984) (explaining good-faith exception). Defendants object that the warrants were not supported by probable cause, were in some instances void on their face, and could not be saved by the good-faith exception, and that the good-faith exception was itself unconstitutional under *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). ECF No. 83 at 1–11; ECF No. 84 at 16–45.

II

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It requires that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.*

"An affidavit establishes probable cause for a warrant if it 'sets forth sufficient facts to establish that there is a "fair probability that contraband or evidence of" criminal activity will be found in the particular place to be searched.'" *United States v. Snyder*, 511 F.3d 813, 817 (8th Cir. 2008) (quoting *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006)). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). In considering whether to issue a warrant, a

judge applies a "totality-of-the-circumstances analysis," *Gates*, 462 U.S. at 238, and uses "common sense," *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005).

Magistrate Judge Brisbois correctly concluded that each warrant was justified by probable cause of criminal activity, so the objections will be overruled.

A

The objections treat the Instagram, Email, and Facebook Search Warrants collectively, and since the affidavits supporting each are identical in most respects, they will be analyzed together. As background, these search warrants were obtained when Defendants were under investigation for violations of "18 U.S.C. § 2421 (Mann Act), 18 U.S.C. § 1951 (sex trafficking), 18 U.S.C. §§ 1956 and 1957 (money laundering), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 371 (conspiracy)." ECF No. 56-1 at 5 ¶ 4; ECF No. 56-2 at 5 ¶ 4; ECF No. 56-3 at 5 ¶ 4. Defendants object that (1) the affidavits fail to allege any criminal activity; (2) no nexus existed between the social media accounts and criminal activity; (3) the affidavits failed to establish evidence of the charged financial fraud; and (4) as for the Facebook Warrant, the Report and Recommendation relied on stale information.

(1) *Allegations of criminal activity.* Defendants argue that the affidavits supporting the social media search warrants describe merely "innuendo and supposition," ECF No. 83 at 3, not criminal behavior. *See, e.g.*, ECF No. 84 at 16 ("Because the affidavits described, at most, a wealthy interracial couple with a polyamorous lifestyle, the warrants fail [to show probable cause]."); ECF No. 83 at 2 ("The Mann Act requires some proof that an

5

individual is being trafficked over state lines for forced prostitution.  There was absolutely no evidence that Ms. Brown nor [sic] Mr. Luthor were engaging in such conduct.").

This misstates the probable cause standard.  "The standard [of probable cause] is 'not a high bar,' and it 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"  *United States v. Edwards*, 891 F.3d 708, 711 (8th Cir. 2018) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)); *see Gates*, 462 U.S. at 235 ("Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." (citation modified)).

The Report and Recommendation correctly determined that the affidavits provided enough facts to establish a fair probability that contraband or evidence of crime would be found by searching the Instagram, email, and Facebook accounts of Mr. Luthor and Ms. Brown.[2]  *See Snyder*, 511 F.3d at 817.  That evidence included bank records "about Defendant Luthor and Defendant Brown's copious personal money transfers; Defendant Brown's use of the suspect email address to issue a [nondisclosure agreement] to J.R.

---

[2]    The Report and Recommendation notes that "Defendant Brown and Defendant Luthor challenge the Instagram and Facebook warrants to the extent that" officers conducting the searches "obtained information from [Ms. Brown's and Mr. Luthor's] respective accounts."  ECF No. 80 at 7 n.8.  Neither Mr. Luthor nor Ms. Brown objected to this statement, though at times Mr. Luthor seems to argue for suppressing evidence obtained from the searches of the unindicted individuals' accounts.  *See* ECF No. 84 at 26 ("*Everything* obtained by virtue of these warrants must be suppressed . . . ." (emphasis added)).  To the extent this objection is made, it is overruled, as a criminal defendant has Fourth Amendment standing to "challenge an unconstitutional search only if the defendant had a 'reasonable expectation of privacy' in the places searched or things seized."  *United States v. Juneau*, 73 F.4th 607, 613 (8th Cir. 2023) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).  Neither defendant has shown they had a reasonable expectation of privacy in other individuals' email or social media accounts.

before a job interview under suspicious circumstances" described in great detail in the affidavits; "information from different tipsters in May 2019, January 2020, and July 2020, that suspected either sex trafficking, fraud, or that Defendant Luthor was a pimp"; "a trash pull at Defendants' residence which uncovered a contraceptive prescription and an antibiotic used to treat vaginal infections"; and "information regarding Defendant Luthor's contacts with women involved in sex work on or about May 3, 2019, May 4, 2019, May 9, 2019, and January 9, 2020." ECF No. 80 at 36–38. The totality of the circumstances created a fair probability that Defendants were engaged in criminal activity.

(2) *Nexus between the accounts and criminal activity.* Defendants argue that the Report and Recommendation failed to show "a nexus existed between the non-crimes alleged, and the social media accounts . . . other than the generalized statement from the affiant that criminals use social media to drive traffic elsewhere." ECF No. 84 at 18; *see United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) ("[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." (citation modified)).

The Report and Recommendation correctly concluded that the affidavits provided a sufficient nexus between the social media accounts and criminal activity to establish probable cause. Start with the Instagram accounts. The affidavits contained evidence from a tipster working at a hair salon that Mr. Luthor and Ms. Brown entered with two other women, who "did not appear to be able to speak for themselves," and were wearing "sexy clothing and makeup," which was "unusual and suspicious in light of the time and circumstances of their appointment." ECF No. 56-1 at 7 ¶ 9. The tipster said Ms. Brown

7

"appeared to be in charge and . . . answered all of the questions about [one of] the younger woman's hair and made decisions about her salon services." *Id.* at 6 ¶ 6. According to the tipster, Mr. Luthor "appeared to be in charge of all three women." *Id.* at 7 ¶ 7. The tipster looked up the Instagram accounts of Mr. Luthor and Ms. Brown. *Id.* at 7 ¶ 8. Law enforcement investigators reviewed the public-facing pages of the accounts, and found posts with photos of Mr. Luthor, Ms. Brown, and the two other women in the salon. *Id.* at 18–20 ¶¶ 39–45. In those posts, the women discussed their affection for each other and admiration for Mr. Luthor, as well as references to traveling to Las Vegas together, and images of a new pool at the Welters Way residence. *Id.* at 18–19, ¶¶ 40–43. The officer who submitted the affidavit attested that "information stored in connection with an Instagram account may provide crucial evidence of the 'who, what, why, when, where, and how' of the criminal conduct under investigation." *Id.* at 23 ¶ 61. This evidence creates a sufficient nexus between the Instagram Accounts and the suspected criminal activity of sex trafficking. *See United States v. Mathis*, No. 18-cr-18(1) (DWF/LIB), 2018 WL 4473529, at *9 (D. Minn. July 17, 2018) (finding probable cause to search a Facebook account where the affidavit provided evidence the defendant had trafficked a victim, that the victim communicated with another victim through Facebook, that the defendant had a Facebook account, that the victim appeared to be looking for the defendant through Facebook connections, and that the affiant testified sex traffickers and sex trafficking victims often communicate through Facebook), *R. & R. adopted*, 2018 WL 4062741 (D. Minn. Aug. 27, 2018).

The Email Warrant also established a nexus between the account to be searched and evidence of crime. The affidavit for this warrant included information from a tipster who applied to be an office manager at GVM in Las Vegas. ECF No. 56-2 at 7–8 ¶ 11. As part of the interview process, Ms. Brown sent the tipster a nondisclosure agreement from an and directed the tipster to reply to an email address apparently associated with Ms. Brown, as her name appeared next to the email address in the "Reply-To" line. *Id.* at 8–9 ¶ 13. GVM flew the tipster from Las Vegas to Minneapolis on a first-class flight, shuttled them by limousine, and conducted the meeting at the Welters Way residence. *Id.* at 11 ¶¶ 18–19. At the house, Mr. Luthor, Ms. Brown, and two women met with the tipster; Ms. Brown "was dressed in provocative clothing," and one woman "had braces and appeared to be 16 to 18 years old." *Id.* at 11 ¶ 21. When the tipster asked about a well-known company that provides software for medical offices, Mr. Luthor and Ms. Brown appeared not to know what the company was. *Id.* at 11–12 ¶ 22. The tipster "believed that [the] women were scared because they kept looking from person to person and looked pale." *Id.* at 12 ¶ 23. After the tipster left the interview, a GVM employee informed the tipster that they did not get the job, and told them that Mr. Luthor was well-known for enforcing nondisclosure agreements. *Id.* at 12–13 ¶¶ 24–26. Because Ms. Brown directed the tipster to send replies regarding the nondisclosure agreement to the subject email account, the affidavit established a sufficient nexus between the email account and evidence of criminal activity—both financial fraud and sex trafficking. Ms. Brown used the email address in the course of conducting GVM business. *See United States v. Miller*, No. 20-cr-232(19) (JRT/BRT), 2022 WL 3644894, at *3 (D. Minn. Aug. 24, 2022) (finding nexus between

9

defendant's email account and fraud where defendant "used that email address to communicate with known participants in the fraudulent . . . scheme"); *United States v. Detloff Mktg. & Asset Mgmt., Inc.*, No. 18-cr-197 (SRN/HB), 2019 WL 3293470, at *13 (D. Minn. Apr. 18, 2019) ("The Court concludes that the information conveyed in Agent Holden's affidavit establishes probable cause to believe that evidence of a crime would be contained within emails associated with the Target Email Account."), *R. & R. adopted*, No. 18-cr-197 (PAM/HB), 2019 WL 2511890 (D. Minn. June 18, 2019).

Lastly, the Facebook Warrant also established a nexus between the accounts to be searched and evidence of crime. The supporting affidavit, in addition to including almost all the information described in the previous affidavits, stated that Mr. Luthor's Facebook account showed a profile photograph of Mr. Luthor and Ms. Brown, posted in December 2020, and a photograph of a Mercedes Benz parked at the Welters Way address. ECF No. 56-3 at 21 ¶¶ 50–51. Ms. Brown's Facebook account showed at least two photographs of her with Mr. Luthor, posted in December 2020. *Id.* at 21 ¶ 52. She "regularly posts photos of herself and [Mr. Luthor]" on her Facebook account. *Id.* at 22 ¶ 53. The affiant stated that, in his training and experience, "individuals often communicate on these platforms, including Facebook, to drive traffic to other sites, gather individuals for a common interest, and/or for marketing purposes," *id.* at 22 ¶ 55, and that "information stored in connection with a Facebook account may provide crucial evidence of the 'who, what, why, when, where, and how' of the criminal conduct under investigation," *id.* at 27 ¶ 71. There is a sufficient nexus linking these accounts, in connection with the other evidence of sex trafficking and fraud, with the suspected criminal activity. The other information in the

10

affidavits provided probable cause that Mr. Luthor and Ms. Brown were engaging in sex trafficking and fraud, and that they did so through GVM and the Welters Way address. The Facebook photographs showing the two of them together and featuring the Welters Way residence linked the criminal activity with Facebook accounts.  That fact, combined with the investigator's affidavit that individuals use Facebook to gather individuals or market products and services, created a sufficient nexus between evidence of criminal activity and the accounts to be searched.  *Cf. Mathis*, 2018 WL 4473529, at \*9.

(3)  *Evidence of financial fraud.*   Mr. Luthor objects that the Report and Recommendation "incorrectly reaches the final conclusion that these warrants were supported by probable cause *of financial fraud*."  ECF No. 84 at 18.  He is incorrect that there are "no allegations of financial fraud . . . made in the social media warrants."  *Id.*  As described above, the affidavits for those warrants provided evidence that GVM's business was illegitimate.  *See, e.g.*, ECF No. 56-1 at 8–11 ¶¶ 11–27 (showing tipster's account of interview).

(4) *Stale evidence*.  Mr. Luthor objects that the Facebook Warrant's

> only connection was that a number possibly connected to Luthor had corresponded with phone numbers that were tied in a law enforcement database to catalogued Backpages type ads. No commercial sex is actually alleged, and Backpages, the only specific webpage listed, was taken down in 2018.  The warrant was signed in [February] 2021.  Three-year-old-or-more information is likely stale.

ECF No. 84 at 22 (footnote omitted).

The Report and Recommendation did not analyze whether the information was stale, but it nevertheless correctly concluded that the information in the Facebook Warrant

11

affidavit provided probable cause.  "The date of the evidence in the affidavit is important to the probable cause determination because untimely information may be deemed stale." *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010).  Courts do not apply a "bright-line test" to determine whether information is stale; they "look to the circumstances of the case," *id.*, including "the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search," *United States v. Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997).  "Where continuing criminal activity is suspected, the passage of time is less significant." *Id.* at 1125 (quoting *United States v. LaMorie*, 100 F.3d 547, 554 (8th Cir. 1996)).  Here, the Facebook Warrant affidavit included information in May 2019 and January 2020 that Mr. Luther's cell phone contacted women involved in commercial sex work, who had advertised their phone numbers with sexually explicit messages.[3]  ECF No. 56-3 at 18–19 ¶¶ 39–41.  These dates line up with the other events supporting probable cause: the May 2019 salon visit, ECF No. 56-3 at 3–5 ¶¶ 6–10, the July 2020 interview, *id.* at 5–11 ¶¶ 11–27, the January 2020 plumbing inspection, *id.* at 12–13 ¶¶ 29–31, and the January 2021 trash pull, *id.* at 16 ¶ 32.  Sex trafficking and financial fraud can be long-running operations, *see United States v. Morris*, No. 17-cr-107 (DWF/TNL), 2018 WL 4483630, at *5 (D. Minn. May 14, 2018) (sex trafficking), *R. & R. adopted*, 2018 WL 3377178 (D. Minn. July 11, 2018); *United States v. Miller*, No. 20-cr-

---

[3]   Mr. Luthor's assertion that the website Backpages was taken down in 2018 is not inconsistent with these dates.  *See* ECF No. 84 at 22.  The affidavit does not say that investigators used Backpages; it says they compared Mr. Luther's phone call records "to records obtained from a law enforcement database that compiles advertisements for commercial sex work from online websites such as backpage.com."  ECF No. 56-3 at 18 ¶ 39.

232(19), 2022 WL 4127546, at *3 (D. Minn. May 31, 2022) (wire fraud), *R. & R. adopted*, 2022 WL 3644894 (D. Minn. Aug. 24, 2022), and the evidence suggests this fraud scheme took place over many years, *see* ECF No. 56-3 at 16–18 ¶¶ 33–38 (providing suspicious GVM financial records from January 2018 to July 2019). The Report and Recommendation did not err by finding probable cause because the evidence in the affidavits was not stale.

B

Defendants argue that the search warrants for the two properties—Welters Way in Eden Prairie, and GVM in Las Vegas—are unsupported by probable cause. As context, these warrants were executed two years after the Social Media Warrants, in January 2023. ECF No. 56-4 at 1 (Welters Way); ECF No. 56-5 at 32 (GVM). At this point, investigators were not pursuing sex trafficking or Mann Act charges, but sought evidence pursuant to 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1347 (government healthcare benefit program fraud); 18 U.S.C. § 1349 (conspiracy), and 18 U.S.C. §§ 1956 and 1957 (money laundering). ECF No. 56-5 ¶ 3; ECF No. 56-4 at 1.

Defendants raise three arguments: (1) to the extent these warrants rely on evidence obtained pursuant to the Social Media Warrants, that evidence is the "fruit of the poisonous tree" and requires suppression of evidence obtained in the Welters Way and GVM searches; (2) the affidavits do not describe criminal activity; and (3) the Report and Recommendation failed to establish a nexus between the information in the affidavit and the crimes investigated. ECF No. 83 at 6–7; ECF No. 84 at 30–34.

13

The first two arguments fail for the reasons explained above. The Social Media Search Warrants were supported by probable cause, so there is no poisonous tree bearing fruit. And the affidavits did not have to allege crimes to provide probable cause that searching the properties—they had to show "a probability or substantial chance of criminal activity." *Edwards*, 891 F.3d at 711.

The affidavits established a nexus between the properties to be searched and evidence of the crimes investigated. The Report and Recommendation described extensive evidence of fraudulent billing practices. *See* ECF No. 80 at 16–24. As a sampling of the Welters Way Warrant affidavit, a former GVM employee attested that GVM recorded services the employee had not provided to a patient, ECF No. 56-4 at 23 ¶ 61; "[s]ome patient witnesses never requested services from GVM and were uncertain how or why GVM technicians started visiting them to render any services," *id.* at 24 ¶ 67; the "top" GVM patients were recorded as having been seen 259 to 479 times, while sessions usually numbered 3 to 50, according to Ms. Brown, *id.* at 26–27 ¶¶ 71, 73. The GVM Warrant affidavit is identical in this respect. *See* ECF No. 56-5 at 18, 20 ¶¶ 60, 64, 66. The affidavits connect the criminal activity with the two locations. The Welters Way Warrant affidavit seeks to find computer systems at Mr. Luthor and Ms. Brown's residence—XXXXX Welters Way—for digital files storing information about financial fraud. ECF No. 56-4 at 32–40 ¶¶ 89–94. Similarly, the GVM Warrant affidavit noted that incriminating evidence would likely be found in the company's Las Vegas office because "GVM's billing and patient records and electronically generated and maintained." ECF No. 56-5 at 26 ¶ 90. Considering the totality of the circumstances identified by the

14

affidavits, there was a fair probability that the computer devices at Welters Way and the GVM office would produce evidence of fraud. *See Snyder*, 511 F.3d at 817.

C

Upon executing the Welters Way Search Warrant in January 2023, law enforcement seized twenty-three devices from the property. ECF No. 56-7 at 4 ¶¶ 6; *id.* at 19. Investigators sought a search warrant for these devices to find evidence of violations of 18 U.S.C. § 2421 (Mann Act), 18 U.S.C. § 1951 (sex trafficking), 18 U.S.C. §§ 1956 and 1957 (money laundering), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 371 (conspiracy). ECF No. 56-7 at 3 ¶ 4.

Defendants object to Judge Brisbois's recommendation not to suppress evidence obtained pursuant to the Twenty-Three Device Search Warrant. They argue that (1) the Warrant is the fruit of the poisonous tree; (2) the Report and Recommendation "gave improper weight to all the salacious, non-criminal, morality offenses described in the affidavit;" and (3) the Warrant failed to show a nexus between the devices and the affidavit's allegations. ECF No. 84 at 34–39; ECF No. 83 at 6–7.

The first two objections fail for the reasons explained above. Since the Social Media Search Warrants were lawful, evidence obtained from them will not be suppressed, and there was no error including that evidence in in the Twenty-Three Device Search Warrant affidavit. Judge Brisbois was in his rights to weigh evidence of non-criminal and morally questionable behavior to the extent that it was probative of crime, and he did not err in concluding that the affidavit provided probable cause of sex trafficking and financial fraud. ECF No. 80 at 46 (citing affidavit testimony of "text exchanges regarding potential

15

arrangements for sex between Defendant Luthor and B.H.; evidence of Defendant Luthor's near million dollar personal expenditures within a six-month period; Defendant Luthor's online and in-person involvement with sex workers; and Defendant Luthor's relationship with a 'pimp' club manager").

Lastly, assuming that all the devices belonged to Mr. Luthor and Ms. Brown, the warrant provided a nexus between the devices and the allegations in the affidavit.[4]  Postal Inspector Julie Barrows, who produced and signed the affidavit, stated that based on her

> knowledge, training, experience, and the experience of other law enforcement personnel, . . . computer hardware and computer software may be utilized to store records which include, but are not limited to: those relating to business activities, criminal activities, associate names and addresses, victims' names, addresses, and images, the identity and location of assets illegally gained through criminal activity, and other information related to criminal activity.

ECF No. 56-7 at 12 ¶ 32; *see id.* at 13 ¶ 33 ("[I]nformation stored within a computer and other electronic storage media may provide crucial evidence of the 'who, what, why, when, where, and how' of the criminal conduct under investigation . . . .").   The warrant

---

[4]      Mr. Luthor contends that he and Ms. Brown possessed all twenty-three devices. ECF No. 84 at 37.  Judge Brisbois assumed for argument's sake that Mr. Luthor and Ms. Brown had standing to challenge the Twenty-Three Device Warrant.  ECF No. 80 at 44 n.33; *see Juneau*, 73 F.4th at 613.  I will do the same.
    Additionally, Mr. Luthor frames this as a particularity objection; he argues the warrant "violates the particularity clause because it seeks to rummage through nearly two dozen devices without articulating in any way how even a single one of those devices is connected to the allegations in the affidavit."  ECF No. 84 at 38.  But this does not raise a particularity problem, as there is no question the items were described in such a manner that officers knew what the warrant authorized them to search.  *See United States v. Pennington*, 287 F.3d 739, 744 (8th Cir. 2002); ECF No. 56-7 at 19 (listing and describing the items to be searched).

application specifically sought evidence from the devices related to financial transactions, advertisements for commercial sex work, travel information for Mr. Luthor and Ms. Brown and B.H., bank and mobile payment service accounts, client and customer lists, and communications with victims. *Id.* at 20–21. Because the devices were found in Defendants' possession at the Welters Way residence, the affidavit described facts supporting probable cause Defendants had committed a crime using the Welters Way residence and digital devices, and the warrant affidavit explained that criminals' electronic devices often contain inculpatory evidence, the application established a nexus between the criminal activity and the items to be searched. *Cf. United States v. Garcia*, No. 25-cr-98 (JRT/JFD), 2025 WL 2963478, at *5 (D. Minn. Oct. 21, 2025) (finding probable cause to search devices found in a home where "there was no way for investigators to know on which electronic devices or storage media the videos and photographs of the alleged sexual assaults were stored"); *United States v. Penaloza-Romero*, No. 14-cr-289(8) (SRN/JSM), 2015 WL 3742994, at *16 (D. Minn. June 15, 2015) ("[C]ommon sense dictates that an individual indicted on drug charges has likely been communicating via electronic devices in furtherance of his crimes, and not, for example, by the United States mail.") (adopting R. & R.).

### III

To deter Fourth Amendment violations, the Court has adopted the exclusionary rule, which "forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009). Whether a Fourth Amendment violation occurred and whether the rule applies are separate questions. *See United States v. Leon*, 468 U.S. 897, 906

17

(1984). Because the exclusionary rule "interfere[s] with the criminal justice system's truth-finding function" and allows some guilty defendants to "go free," *id.* at 907, its application has been limited to situations where its deterrent effect outweighs its social costs, *see Herring*, 555 U.S. at 144 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."); *Davis v. United States*, 564 U.S. 229, 237 (2011) ("For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs."). One exception, from *Leon*, is when an officer "reli[ed] on the magistrate's probable-cause determination and on the technical sufficiency of the warrant," and the officer's reliance was objectively reasonable. *Leon*, 468 U.S. at 922. *Leon* and its progeny counsel that

> [w]hen the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.

*Davis*, 564 U.S. at 238 (citation modified). As the Court put it in *Herring*, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." 555 U.S. at 144.

Because the search warrants were all supported by probable cause, *Leon* does not apply and the good-faith determination is unnecessary. If it did apply, I have reviewed that portion of the Report and Recommendation de novo and adopt its conclusions. And if it

18

mattered, I reject Defendants' argument that *Leon* has been overruled by *Dobbs*.  District courts may not decline to follow binding precedent, even if later opinions cast doubt on earlier ones.  *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent.").  *Leon* remains binding precedent, and I am not at liberty to ignore it where it applies.

## ORDER

Therefore, based upon all of the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1.    The Report and Recommendation [ECF No. 80] is **ACCEPTED**.

2.    Defendant Brown's Objections to the Report and Recommendation [ECF No. 83] are **OVERRULED**.

3.    Defendant Luthor's Objection to the Report and Recommendation [ECF No. 84] are **OVERRULED**.

4.    Defendant Brown's Motion to Suppress [ECF No. 56] is **DENIED**.

5.    Defendant Luthor's Motion to Suppress [ECF No. 63] is **DENIED**.

Dated:  March 5, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court