**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
*Criminal No.: 25-CR-88 (1) (ECT/LIB)*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>Vs.<br><br>GABRIEL ADAM ALEXANDER LUTHOR ET AL,<br><br>Defendants. | **DEFENDANT GABRIEL LUTHOR'S MEMORANDUM IN RESPONSE TO THE GOVERNMENT'S REQUEST TO LIMIT EVIDENCE CONCERNING BRYAN STEWART'S TERMINATION AND CIVIL LAWSUIT** |

Defendant Gabriel Adam Alexander Luthor, through his counsel, Thomas C. Plunkett, submits this memorandum in response to the government's November 8, 2026 email to the Court asking that, under Federal Rule of Evidence 403, the Court exclude the reasons GVM gave for terminating Bryan Stewart and all evidence of Mr. Stewart's civil lawsuit and judgment, while permitting Mr. Stewart to testify that he was never given a legitimate explanation and that he believes he was fired in retaliation for trying to correct GVM's billing.

## INTRODUCTION

Mr. Luthor does not intend to offer the reasons GVM gave for Mr. Stewart's termination, and he does not object to excluding them. But the exclusion must run both ways, and the government's proposal does not. It would remove the explanation GVM actually gave, keep Mr. Stewart's opinion that the real reason

was retaliation, and bar the defense from showing that Mr. Stewart has been pursuing GVM for money since 2022. Mr. Luthor asks for a mutual order and for a limited opportunity to expose Mr. Stewart's financial interest, and he opposes the government's alternative, a compromise previously offered to the Government.

## BACKGROUND

GVM terminated Mr. Stewart around June 1, 2022. The written notice describes the termination as "[b]y mutual written agreement" and offers eight weeks' pay in exchange for a release. (See GJS_00022813 at 815.) On June 6, 2022, Mr. Stewart rejected the offer, wrote that the termination was "not based on mutual written agreement," and demanded six months' salary under his employment agreement. (GJS_00022742–744.) On June 8, 2022, GVM's counsel set out the reasons for the termination in a letter. Mr. Stewart answered in writing the same day, disputing those reasons at length and stating his view that "[t]he timing of this dismissal seems consequential to the billing audit." (GJS_00022763–766.) In a second email that evening, he proposed a release in exchange for a $77,000 lump sum, writing, "At this point, I just want to move on," and that he did not "want to waste my or the companies time on litigation." (*Id.* at GJS_00022764.)

GVM did not accept. On August 31, 2022, Mr. Stewart sued GVM for money, alleging retaliation under the False Claims Act and breach of contract. His complaint is the first place the statement he attributes to Mr. Luthor about

Revesolv appears. (Compl., *Stewart v. Golden Victory Medical*, No. 22-cv-2145 (D. Minn.), Doc. 1 at 10.) Mr. Stewart first spoke with federal agents on October 18, 2022, seven weeks after he filed suit. (IRPT_00001826–1835.) GVM did not defend the case, and in March 2024 a default judgment was entered against GVM for more than $1.8 million. The judgment runs against GVM, not Mr. Luthor, and it has not been paid. (CV_00000005–033.)

## ARGUMENT

### I. Any Exclusion of the Reasons for the Termination Must Be Mutual.

#### A. Mr. Stewart's belief about why he was fired is not admissible

Item (iv) of the Government's email is not a fact within Mr. Stewart's knowledge. It is his opinion about the motive of the people who made the decision. A witness may testify only to matters within his personal knowledge, Fed. R. Evid. 602, and lay opinion must be rationally based on the witness's own perception and helpful to the jury, Fed. R. Evid. 701. Mr. Stewart did not perceive anyone else's motive, and the inference he draws from timing is one the jury can evaluate for itself. The Court deferred ruling on Mr. Luthor's motion to exclude lay opinions about intent until the issue arose at trial. (ECF No. 176 at 1–2.) It has arisen.

### B. Telling the jury he received no "legitimate explanation" would mislead the jury and open the door

Item (ii) is inaccurate. Mr. Stewart was given an explanation, in writing, by GVM's counsel, and he answered it in writing the same day. (GJS_00022763–766.) Whether it was "legitimate" is a characterization, and it is the very question the government seeks to keep from the jury. Excluding the explanation while admitting testimony that there was none would leave the jury with a false impression, and if the government elicits item (ii), fairness would require that the defense be permitted to show what Mr. Stewart was told and how he responded.

### C. The government should not argue retaliation from the termination

If the reasons for the termination would distract the jury, the government should not argue the other side of the same question. The fact and date of the termination and the terms of the written notice can come in without characterization. The government should be precluded from eliciting or arguing that Mr. Stewart was terminated because of the audit, his remediation efforts, or any effort to stop false billing, from describing him as a whistleblower, and from arguing that the termination shows consciousness of guilt, and it should instruct its witnesses accordingly.

## II. The Confrontation Clause Requires an Opportunity to Expose Mr. Stewart's Financial Interest and Motive

"[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974). A defendant shows a Confrontation Clause violation when he is "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986); see *Yang v. Roy, 743 F.3d 622, 626 (8th Cir. 2014)*). Bias, including a witness's "self-interest," is always relevant. *United States v. Abel*, 469 U.S. 45, 52 (1984). The Court retains "wide latitude" to impose reasonable limits based on concerns about prejudice and confusion, *Van Arsdall*, 475 U.S. at 679, but it may not foreclose the subject.

Mr. Stewart's money claim against the company the defendants owned is a prototypical form of bias. He sought six months' salary, then offered to "move on" for $77,000, then sued, and he now holds a judgment of more than $1.8 million that has not been paid. More important, the timing bears directly on his credibility. The statement about Revesolv that the government will offer as evidence of Mr. Luthor's intent first appeared in a complaint seeking money, weeks before Mr. Stewart ever spoke with agents. The jury is entitled to know that the account was first given in a lawsuit against GVM. Without that fact, the jury would receive a

"significantly different impression of [the witness's] credibility." *Van Arsdall*, 475 U.S. at 680.

The government's own proposal makes the point stronger. It would have Mr. Stewart tell the jury that he requested severance he believed he was owed and was never paid, which invites sympathy for a witness with an unpaid claim. The defense must then be permitted to show what followed: the $77,000 proposal, the lawsuit, and the unpaid judgment. A compromise offer may be admitted for "proving a witness's bias or prejudice." Fed. R. Evid. 408(b).

The government's Rule 403 concerns can be met without excluding the evidence. Mr. Luthor proposes that the defense be permitted to establish only that 1. after his termination, Mr. Stewart sued GVM for money, 2. he did so before he first spoke with agents, and 3. he holds a money judgment against GVM that has not been paid. Neither party would refer to the nature of the claims, the court's opinion or findings, the default, the damages hearing, the components of the award, or the judge who entered it, and the government would not elicit those matters on redirect. The Court would give a limiting instruction.

## III. The Government's Alternative Should Be Rejected.

The government's alternative, that the jury hear that Mr. Stewart "won" a False Claims Act retaliation lawsuit and was awarded more than $1.8 million, would place a court's conclusions before the jury on the central contested question

in this trial, whether GVM's owners acted with intent to defraud. Courts recognize that judicial findings offered in a later trial are hearsay and carry an unusual and unfair weight with jurors. See *Nipper v. Snipes*, 7 F.3d 415, 417–18 (4th Cir. 1993); *United States v. Sine*, 493 F.3d 1021, 1033–36 (9th Cir. 2007). A civil default judgment is not a criminal conviction, Fed. R. Evid. 803(22), and a default reflects no adjudication of contested facts. Explaining why GVM did not defend the civil case would also draw the jury into GVM's litigation decisions, including matters that bear on the defendants' constitutional rights and that the jury may not consider. That is the confusion Rule 403 guards against.

Because Mr. Luthor does not intend to offer the reasons for the termination, the condition on which the alternative depends will not arise under a mutual order. If the government opens the door by eliciting items (ii) or (iv) or arguing retaliation, Mr. Luthor asks that the consequence be addressed at sidebar.

## <u>CONCLUSION</u>

Mr. Luthor respectfully asks the Court to order that:

1. Neither party shall elicit or offer the reasons GVM gave for terminating Mr. Stewart, testimony that he was not given a legitimate explanation, or Mr. Stewart's belief or opinion about the reason for or motive behind his termination. The fact, date and written terms of the termination may be received.

2. The government shall not elicit or argue that Mr. Stewart was terminated because of the audit, his remediation efforts, or any effort to stop false billing, shall not describe him as a whistleblower, shall not argue that the termination shows consciousness of guilt, and shall instruct its witnesses accordingly.

3. The defense may establish, for bias and interest only, that after his termination Mr. Stewart sued GVM for money, that he did so before he first spoke with agents, and that he holds a money judgment against GVM that has not been paid. No party shall refer to the nature of the claims, the opinion or any findings, the default, the damages hearing, the components of the award, or the judge who entered it.

4. If the government elicits that Mr. Stewart requested severance that was not paid, the defense may offer his June 6 and June 8, 2022 demands and his $77,000 proposal under Rule 408(b).

5. Exhibits containing excluded matters shall be redacted consistent with this order.

6. The Court will give the following limiting instruction when the evidence is received: “You have heard that Mr. Stewart filed a lawsuit against GVM and has a money judgment against GVM. You may consider this evidence only in deciding whether Mr. Stewart has a bias or an interest that affects his testimony. You must

not consider it for any other purpose, and you must not speculate about the nature of the lawsuit or the basis for the judgment."

Respectfully submitted,

Dated: November 9, 2026

/s/ Thomas C. Plunkett
Thomas C. Plunkett
Attorney No. 260162
First National Bank Building
332 Minnesota St.
Suite W1610
St. Paul, MN 55101
Phone: (651) 222-4357
Email: tcp@tp4justice.com
**Attorney for Gabriel Luthor**