**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
*Criminal No.: 25-CR-88 (ECT/LIB)*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>Vs.<br><br>GABRIEL ADAM ALEXANDER LUTHOR ET AL,<br><br><br>Defendants. | **DEFENDANT GABRIEL LUTHOR'S MOTION FOR RECUSAL UNDER 28 U.S.C. § 455(a) AND (b)(1), AND FOR INDIVIDUAL INQUIRY OF JURORS REGARDING MID-TRIAL PUBLICITY** |

Defendant Gabriel Adam Alexander Luthor, through his counsel, Thomas C. Plunkett, respectfully moves the Court for an order (1) recusing under 28 U.S.C. § 455(a) and (b)(1) and directing that another judge complete the trial under Federal Rule of Criminal Procedure 25(a), (2) in the alternative, referring to another judge any determination whether Mr. Luthor's absence is voluntary, and any related question of release conditions or sanctions, to be decided only after an evidentiary hearing on the medical evidence, and (3) in any event, questioning each juror individually, outside the presence of the other jurors, about exposure to news coverage of this case published on November 5, 2026. This motion is based on the Declaration of Thomas C. Plunkett ("Plunkett Decl.") and its exhibits, and on all the files, records and proceedings in this case. Counsel informed the government

of this motion at 6:15 am on November 6, 2026 and the government has not taken a position, at this point in time.

## INTRODUCTION

Mr. Luthor brings this motion with respect for the Court and with reluctance. His principal ground, § 455(a), does not require the Court to find that it is biased. It asks whether an informed, objective observer, knowing what is now in the public record, would reasonably question the Court's impartiality for the remainder of this trial.

On November 5, 2026, with the jury sworn and Mr. Luthor in the hospital, the Court stated on the record:

> "From where I sit, there are several reasons to question whether Mr. Luthor is really too sick to have appeared for court this morning. Based on my now-lengthy experience with this case, what I am saying is that if I had to place a wager on the issue this morning, I would bet that Mr. Luthor is exaggerating his symptoms, or perhaps worse, to make it difficult for this trial to proceed."
>
> See https://www.kare11.com/article/news/local/courts-news/15-million-fraud-trial-on-hold-defendant-hospital/89-a5ff7f5d-e10e-4b1b-8a86-7367569b15aa

Last evening, KARE 11 published the statement in an article titled "$15 million fraud trial on hold after defendant checks into hospital," and other outlets carried it. (Plunkett Decl. ¶¶ 8–10, Exs. A–B.)

The statement is different in kind from the remarks *that Liteky v. United States*, 510 U.S. 540 (1994), holds will ordinarily not support recusal. It is not an

expression of impatience with counsel, and it is not a ruling. It is a public prediction, made before any evidence was taken, that Mr. Luthor is deceiving the Court, "or perhaps worse," to obstruct the trial. This is a fraud trial. The central question for the jury is whether Mr. Luthor intended to deceive. For the coming weeks, the Court will rule on the evidence, the instructions and every motion that bears on that question.

Mr. Luthor's concern is not any single ruling. It is the fairness of the trial as a whole, and the public's confidence in it. An average person who knows all of the relevant facts, including that the presiding judge has said publicly that he would bet the defendant is deceiving the Court, would reasonably question whether the rest of this trial will be conducted by an impartial judge. Section 455(a) requires recusal in that circumstance, without any finding of actual bias.

## BACKGROUND

On May 4, 2026, Defendants jointly moved to disqualify under § 455(a) based on the Court's default judgment in *Stewart v. Golden Victory Medical LLC*, No. 22-cv-2145 (ECT/LIB), 2024 WL 1285920 (D. Minn. Mar. 26, 2024), a case brought by GVM's former chief executive officer. (ECF No. 104.) The Court denied the motion on May 13, 2026. It reasoned that most of its statements in Stewart reflected allegations taken as true on default, and that the witness's credibility at trial would be decided by the jury. (ECF No. 107 at 2–4.)

Jury selection began on November 2, 2026. Mr. Luthor attended jury selection until he was excused for health reasons, after waiving his presence for jury selection only. The jury was subsequently sworn, outside his presence. (Plunkett Decl. ¶ 3.) Soon, Mr. Luthor was in a hospital emergency department. Counsel visited him in person after court adjourned that day, saw that he was receiving treatment and waiting to be admitted, and reported to chambers. (Id. ¶ 4.) Mr. Luthor told counsel that he wishes the trial to proceed even in his absence, and counsel informed the Court. (Id. ¶ 5.) The Court has not proceeded in his absence. No opening statement has been given and no witness has testified. (Id. ¶ 6.)

On the morning of November 5, 2026, outside the presence of the jury, the Court made the statement quoted above. (Id. ¶ 7.) At about 5:25 p.m. that day, KARE 11 published an article by reporter Lou Raguse quoting the statement. The article was republished on Yahoo News. (Id. ¶ 8, Ex. A.) The same article reports that Ms. Brown "turned against" Mr. Luthor after reading a witness report from one of his former girlfriends describing "alleged sexual and physical abuse," and that Ms. Brown seeks severance because she "has to point the finger at him in her defense." (Id. ¶ 9.) A second outlet published a separate article about the trial the same day. (Id. ¶ 10, Ex. B.) None of this is evidence. The Court has excluded to some degree and reserved ruling on admissibility of abuse allegations. The sworn

jurors are in recess and at home. (Id. ¶ 11.) Counsel informed the government of this motion at 6:15 a.m. on November 6, 2026, and the government has not yet taken a position. (Id. ¶ 12.)

## ARGUMENT

### I. The Governing Standard

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). And "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). Congress codified those principles in 28 U.S.C. § 455(a), which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test is "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all of the relevant facts of a case." *United States v. Aldridg*e, 561 F.3d 759, 764 (8th Cir. 2009) (cited in ECF No. 107 at 2). The standard is objective, and "what matters is not the reality of bias or prejudice but its appearance." *Liteky*, 510 U.S. at 548. Disqualification is required "if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996). Section 455(a) was designed to promote public confidence in the integrity of the judicial process. Id. (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n.7 (1988)). Section

455(b)(1) separately requires disqualification where the judge "has a personal bias or prejudice concerning a party." Mr. Luthor relies principally on § 455(a) and invokes § 455(b)(1) to preserve it.

Mr. Luthor recognizes that a judge is presumed impartial and that the party seeking disqualification bears a substantial burden. *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003). He also recognizes that opinions formed "on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings," do not support recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible," and that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not suffice. *Liteky*, 510 U.S. at 555–56. But Liteky does not hold that statements from the bench can never require recusal. "[P]redispositions developed during the course of a trial will sometimes (albeit rarely) suffice." Id. at 554. The question is whether the statement reveals an opinion that an informed observer would regard as a prejudgment of the party. See *United States v. Antar*, 53 F.3d 568 (3d Cir. 1995) (reversing convictions and remanding for a new trial before a different judge where the trial judge's in-court statement about his "object in this case from day one" would lead a reasonable observer to question his impartiality).

This motion is timely. Mr. Luthor brings it the day after the statement was made. See *Fletcher*, 323 F.3d at 664.

## II. A Reasonable, Informed Observer Would Question Whether the Rest of This Trial Will Be Impartial

### A. The statement accuses Mr. Luthor of the very conduct the jury must decide whether he committed

The Court did not stop at exaggeration. It said it would bet that Mr. Luthor is exaggerating his symptoms "or perhaps worse, to make it difficult for this trial to proceed." A listener would understand "perhaps worse" to mean feigning illness on purpose to obstruct the trial, that is, deliberately deceiving the Court. The central question for the jury is whether Mr. Luthor acted with intent to deceive.

Over the coming weeks, the Court will decide which evidence of intent the jury hears, whether other-acts evidence comes in and with what limits, how the jury is instructed on intent, good faith and willful blindness, whether the evidence is sufficient under Rule 29, and, if there is a conviction, what sentence to impose. Each of those decisions calls for judgment about Mr. Luthor and what he knew and intended. An informed observer who heard the presiding judge say in open court, before any evidence on the point, that he would bet the defendant is deliberately deceiving the Court would reasonably wonder whether the judge can approach those decisions with an open mind. The fairness of a trial depends on more than the verdict. It depends on the rulings that shape what the jury sees and hears.

### B. The statement prejudged a contested question before any evidence was received

Whether Mr. Luthor is voluntarily absent is a question for the Court. Fed. R. Crim. P. 43(c)(1)(A). See *Taylor v. United States*, 414 U.S. 17 (1973). Before any medical evidence was received, the Court announced which way it would bet. That is the kind of prejudgment an objective observer notices. In denying the earlier motion, the Court explained that its prior assessment of a witness did not raise a reasonable question of impartiality in part because that witness's credibility "will be determined by the jury, not me." (ECF No. 107 at 3, citing *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993).) Here the Court has assessed the credibility of the defendant himself, publicly, on a question the Court decides, and in terms that bear directly on the question the jury decides.

### C. The statement rests on the Court's accumulated view of Mr. Luthor and runs against the known facts

The Court grounded its wager in its "now-lengthy experience with this case." That experience includes Stewart, in which the Court entered a default judgment and damages award against Mr. Luthor's company on allegations, accepted as true, that he and Ms. Brown responded to billing problems with a "lack of concern." (ECF No. 104 at 6. ECF No. 107 at 2.) Mr. Luthor accepts the Court's ruling that Stewart, standing alone, did not require disqualification. But § 455(a) asks how the whole record would appear to an informed observer, and that record now includes

a public statement, drawn from the Court's accumulated experience, that the Court would bet Mr. Luthor is deceiving it.

The known facts also point the other way. Mr. Luthor asked that the trial go forward without him. (Plunkett Decl. ¶ 5.) A defendant trying to prevent a trial from proceeding does not ask the Court to proceed in his absence. Counsel saw Mr. Luthor in the emergency department receiving treatment, and Mr. Luthor has provided his medical information to the Court on the record and in *ex parte* email. (Id. ¶¶ 4, 6.) A wager placed against those facts, before they were tested, is the kind of prejudgment an objective observer would find troubling.

**D. The statement has been published, and public confidence is at stake**

In *Tucker*, the Eighth Circuit ordered reassignment because the facts creating an appearance of partiality had been "widely reported in the press," so that "the risk of a perception of judicial bias or partiality is sufficiently great" to require a different judge, even though the court expressed confidence that the district judge would be fair. 78 F.3d at 1324–25. Here the statement itself is the news. The public has now read that the judge presiding over this jury trial would bet that the defendant is faking his illness. Whatever the verdict, an observer who read that statement would have reason to doubt that it was reached in a fair proceeding. That is the appearance § 455(a) is meant to prevent.

## III. Recusal Need Not Cost the Sworn Jury

Rule 25(a) permits any judge regularly sitting in or assigned to the court to complete a jury trial if the judge before whom the trial began "cannot proceed because of death, sickness, or other disability," and the successor judge "certifies familiarity with the trial record." Fed. R. Crim. P. 25(a). A judge who is disqualified under § 455 cannot proceed. Because no opening statement has been given and no witness has testified, a successor judge could become familiar with the record quickly. Mr. Luthor does not seek a mistrial by this motion, and he reserves all rights.

If the Court declines to recuse, Mr. Luthor asks in the alternative that any determination whether his absence is voluntary or issues of his detention be made by another judge, and only after an evidentiary hearing at which the medical information is received under seal. That alternative addresses one question. Mr. Luthor's central concern is the fairness of the entire trial, which only recusal fully addresses.

## IV. The Court Should Question Each Juror Individually About the November 5 Coverage

Whatever the Court decides about recusal, the jury must be protected. The trial judge's "lightest word or intimation is received with deference, and may prove controlling." *Quercia v. United States*, 289 U.S. 466, 470 (1933) (quoting *Starr v. United States*, 153 U.S. 614 (1894)). In Quercia, the Supreme Court reversed a

conviction where the judge told the jury that a defendant's mannerism was "almost always an indication of lying," and held that the judge's cautionary statement did not cure the error. Id. at 468, 472. A juror who reads that this Court would bet Mr. Luthor is faking his illness receives a similar message, without any of the protections of a trial.

The same coverage reports allegations of sexual and physical abuse drawn from a witness report, and the co-defendant's intention to blame Mr. Luthor. "The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence," and "[i]t may indeed be greater for it is then not tempered by protective procedures." *Marshall v. United States*, 360 U.S. 310, 312–13 (1959). When prejudicial publicity arises during trial, the court must decide whether a fair trial is still possible, individual questioning of jurors is the safer practice, and it is for the court, not the jurors, to decide whether their impartiality has been affected. *United States v. Williams*, 568 F.2d 464 (5th Cir. 1978). The trial judge has "the duty to neutralize the effect of any known area of prejudice." *United States v. Bear Runner*, 502 F.2d 908 (8th Cir. 1974). Mr. Luthor requests that inquiry now. See id. (rejecting a publicity claim where the defendant did not ask the court to question jurors further).

Mr. Luthor asks the Court, when the jurors return and before any further proceedings, to (1) question each juror individually, outside the presence of the others and with counsel present, without describing the coverage, whether the juror has seen, heard or read anything about this case outside the courtroom, (2) ask any juror who answers yes what the juror learned and whether the juror shared it with anyone, (3) permit counsel to propose follow-up questions, and (4) renew the admonition that jurors avoid all news reports, social media and internet searches about the case. Mr. Luthor reserves the right to seek further relief, including excusal of any exposed juror or a mistrial, depending on the results.

## CONCLUSION

Mr. Luthor asks for a fair trial before a judge whose impartiality cannot reasonably be questioned. He respectfully asks the Court to (1) recuse under 28 U.S.C. § 455(a) and (b)(1) and direct that the trial be completed by another judge under Rule 25(a), (2) in the alternative, refer to another judge any determination whether his absence is voluntary or detention, and any related release or sanction question, to be decided only after an evidentiary hearing on the medical evidence, and (3) in any event, question each juror individually about exposure to the November 5, 2026 coverage and renew the Court's admonition. Mr. Luthor reserves his right to file an affidavit under 28 U.S.C. § 144 and to seek further relief, including a mistrial.

Respectfully submitted,

Dated: November 6, 2026

/s/ Thomas C. Plunkett
Thomas C. Plunkett
Attorney No. 260162
First National Bank Building
332 Minnesota St.
Suite W1610
St. Paul, MN 55101
Phone: (651) 222-4357
Email: tcp@tp4justice.com
**Attorney for Gabriel Luthor**